IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL A. WILSON,                    :

    Plaintiff,                    :

v.                                    :
                            Civil Action No. GLR-14-79
SUSQUEHANNA BANCSHARES, INC.,         :
et al.,
                            :

    Defendants.                   :

**MEMORANDUM OPINION**

Pending before the Court is Defendants Susquehanna Bancshares, Inc. and Susquehanna Bank's (collectively, "Susquehanna") Motion to Dismiss and Motion for Summary Judgment. (ECF No. 3).  Plaintiff Michael A. Wilson is suing Susquehanna for the alleged retaliation he received in response to Wilson reporting Susquehanna's alleged unlawful practices to the proper authorities.  Wilson is also suing Susquehanna for alleged racial discrimination.  The Court, having reviewed the pleadings and supporting documents, finds no hearing necessary.  See Local Rule 105.6 (D.Md. 2011).  Susquehanna's Motion will be granted.

**I.  BACKGROUND[1]**

Susquehanna is a chartered bank incorporated in the State of Maryland.  From May 2012 until March 2013, Susquehanna employed

---

[1] Unless otherwise noted, the following facts are taken from the Complaint and accepted as true for the purpose of this motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).

Wilson, an African-American male, as an Appraisal Review Associate. In this capacity, Wilson reviewed state and federally related commercial real estate transactions to ensure compliance with internal and external regulations. Wilson also routinely verified the independence of external appraisers.

During his tenure at Susquehanna, Wilson experienced differential treatment. For example, Susquehanna monitored Wilson's arrival and departure times while others were extended the courtesy of arriving late to address personal matters. On one occasion, Wilson was informed that he returned from lunch minutes late. Wilson was also labeled a "brown nose" and "suck up," asked to arrange others' birthday celebrations while his was never acknowledged, and repeatedly denied an opportunity to transfer to a location closer to home. According to Wilson, Appraisal Review Associate Robert Dennison[2] made significantly more than him despite Wilson's participation on the team that hired and trained Mr. Dennison.

In January 2013, Tonya Swanson, Susquehanna's V.P. and Appraisal Review Officer, and Paula Browning, Susquehanna's V.P. and Manager of Commercial Real Estate, instructed Wilson to discontinue external appraisal independence verifications and to ignore Interagency Appraisal and Evaluation Valuation Guidelines

---

[2] Susquehanna notes the correct spelling of Robert's last name is Dennison, not Denison. (See Defs.' Mem. Supp. Mot. Dismiss & Mot. Summ. J. ["Defs.' Mot."] at 2 n.3, ECF No. 3-1). Therefore, the Court will use the correct spelling throughout this opinion.

when reviewing appraisals performed for banks other than Susquehanna. Wilson informed both ladies that ignoring the guidelines was illegal. Specifically, on January 17, 2013, Wilson informed Swanson that he intended to file a complaint regarding her request because it was unethical and in violation of the law. That day, Wilson filed an internal complaint with Susquehanna's EthicsPoint telephone hotline. The next day, on January 18, 2013, Wilson filed a complaint with the Philadelphia Federal Reserve Consumer Help Department ("FRB Complaint"). On January 22, 2013, Wilson reiterated his complaint to Karen Gerdes, Regional Manager of Human Resources.

Despite Wilson's complaints, Susquehanna's employees continued to violate appraisal regulations. Moreover, after filing the FRB Complaint, Wilson endured various forms of retaliation, including being excluded from critical meetings and decisions, receiving hostile comments and emails from managers, denial of professional development financial assistance and reimbursement, and denial of previously offered learning opportunities. Wilson was also denied an internal promotion to Chief Review Appraiser without an interview. Approximately two months after filing his complaint, Wilson resigned under duress on March 18, 2013.

On or about April 2013, Wilson filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC"). The

EEOC issued Wilson a right-to-sue letter on December 24, 2013. Wilson filed suit against Susquehanna on January 10, 2014, alleging violation of the Dodd-Frank Whistleblower Statute, 15 U.S.C. § 78u-6 (2012) (Count I), wrongful discharge against public policy (Count II), and racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. (2012) (Count III).   (ECF No. 1).   Susquehanna now moves to dismiss Counts I and II, and a portion of Count III. Susquehanna also moves for summary judgment on Wilson's unequal pay claim in Count III.

## II.  DISCUSSION

### A.  Motion to Dismiss

#### 1.  Standard of Review

The purpose of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999).   "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).   A complaint is also insufficient if it

relies upon "naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted).

### 2. Analysis

The Court will grant Susquehanna's Motion to Dismiss as to Counts I and II because Wilson has failed to allege an adverse employment action. The Court will also grant Susquehanna's Motion as to Count III because the alleged facts fail to raise an inference of racial discrimination, fail to allege an adverse employment action, and fail to identify protected activity.

### a. Counts I and II

The primary basis of Wilson's Dodd-Frank Whistleblower and common law wrongful discharge claims is that Susquehanna forced him to resign under duress after he informed the proper internal and external channels of management's law-breaking directives. Susquehanna avers these claims should be dismissed because Wilson's voluntary resignation is not considered an adverse employment action. Specifically, Susquehanna argues Wilson does not properly allege that he was constructively discharged. The Court agrees.

To allege a prima facie claim of retaliation under the Dodd-Frank Whistleblower statute and common law wrongful discharge, Wilson must show that he suffered an adverse employment action, among other things. See Ott v. Fred Alger Mgmt., Inc., No. 11

5

Civ. 4418 LAP, 2012 WL 4767200, at *4 (S.D.N.Y. Sept. 27, 2012) ("The elements of a retaliation claim under the Dodd-Frank Act are (1) that the plaintiff engaged in a protected activity, (2) that the plaintiff suffered an adverse employment action, and (3) that the adverse action was causally connected to the protected activity."); Shapiro v. Massengill, 661 A.2d 202, 213 (Md.Ct.Spec.App. 1995) ("[T]o state a claim for wrongful discharge, the employee must demonstrate: (1) that the employee was discharged; (2) that the dismissal violated some clear mandate of public policy; and (3) that there is a nexus between the defendant and the decision to fire the employee." (citing Leese v. Balt. Cnty., 497 A.2d 159, 172 (Md.Ct.Spec.App. 1985))). Moreover, because Wilson alleges he resigned under duress, the constructive discharge theory applies.

"To establish constructive discharge, a plaintiff must be able to show that [his] former employer deliberately made an employee's working conditions intolerable, and thereby forced [him] to quit." Murphy-Taylor v. Hofmann, 968 F.Supp.2d 693, 722 (D.Md. 2013) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 378 (4th Cir. 2004)) (internal quotation marks omitted); see also Jackson v. Clark, 564 F.Supp.2d 483, 492 (D.Md. 2008) ("Maryland courts apply an objective standard to assess constructive discharge claims. 'The applicable standard to determine if the resignation is, in effect, a constructive

discharge, is whether the employer has deliberately caused or allowed the employee's working conditions to become so intolerable that a reasonable person in the employee's place would have felt compelled to resign." (quoting Beye v. Bureau of Nat'l Affairs, 477 A.2d 1197, 1203 (Md.Ct.Spec.App. 1985))).  To be deliberate, an employer's actions must be intended "'as an effort to force the plaintiff to quit.'"  Heiko v. Colombo Sav. Bank, 434 F.3d 249, 262 (4th Cir. 2006) (quoting Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 272 (4th Cir. 2001)).  Moreover, the intolerable nature of an employment environment is determined from the objective perspective of a reasonable person.  Id. (citing Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004)).

Although Wilson alleges that the compulsion of his resignation under duress constitutes an adverse employment action, there is nothing in the Complaint that suggests his resignation was involuntary.  In fact, Wilson merely repeatedly alleges he "was compelled to resign."  (See, e.g., Compl. ¶¶ 39, 47, 58). This conclusory allegation fails to indicate what Susquehanna did to compel Wilson to resign after he reported the violations, or that Susquehanna intended for Wilson to resign.  Wilson attempts to remedy his insufficient allegations by arguing "it is reasonable to infer from his actions and complaint concerning the reported violations, that he could not tolerate violating the law." (Pl.'s Opp'n to Defs.' Mot. to Dismiss Pl.'s Compl. & Mot.

Summ. J. ["Pl.'s Opp'n"] at 15, ECF No. 6).  This argument fails for several reasons.

First, it is well settled that the sufficiency of Wilson's allegations is limited to the face of the Complaint.  See Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) (stating the plaintiff "is bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint.").  Second, there is no indication that Wilson actually agreed to violate the law.  Contrarily, Wilson alleges that, in addition to filing the internal and external complaints, he also refused to violate the law on two different occasions.  (Compl. ¶ 28).  Even if Wilson did violate the law and his disdain for those violations was the catalyst for his resignation, there is no indication that Susquehanna demanded that Wilson violate the law or lose his job.  Finally, to the extent Wilson intends to incorporate the allegations in Count III to Counts I and II, that intention fails for the reasons discussed infra.  Therefore, the Complaint fails to allege plausibly that Susquehanna compelled Wilson to resign under duress.

Accordingly, Susquehanna's Motion to Dismiss Counts I and II will be granted.

### b. Count III

Susquehanna moves to dismiss Wilson's Title VII claim because he failed to allege a constructive discharge, his remaining

allegations do not constitute adverse employment actions, he failed to allege an inference of race discrimination, and he failed to engage in protected activity under Title VII.

Wilson's Title VII claim is a hodgepodge of allegations that range from disparate treatment, to failure to promote, to retaliation. Although Wilson is a member of a protected class, his Complaint is void of facts suggesting that race played a role in the listed allegations. At bottom, Wilson's allegations merely identify his membership in a protected class and list a series of events that allegedly occurred during his tenure at Susquehanna. There is nothing in the Complaint that suggests Wilson's race was a motivating factor in any of these actions.

Furthermore, Susquehanna allegedly monitoring Wilson's arrival and departure times, failing to acknowledge his birthday, refusing to transfer him to a location closer to his residence, and requests that he violate internal controls neither constitute constructive discharge nor adverse employment actions. See Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) ("An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" (alteration in original) (quoting James, 368 F.3d at 375)); James, 368 F.3d at 378 ("[M]ere 'dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions

are not so intolerable as to compel a reasonable person to resign.'" (quoting <u>Carter v. Ball</u>, 33 F.3d 450, 459 (4th Cir. 1994))).

Wilson's retaliation claim[3] fails because he does not allege he engaged in a protected activity recognized under Title VII. <u>See, e.g.,</u> <u>Harden v. Wicomico Cnty., Md.</u>, 436 F.App'x 143, 146 (4th Cir. 2011) (noting the two distinct categories of protected activities are participating in a Title VII proceeding and "engaging in oppositional activities to bring attention to an employer's discriminatory activities").  To the contrary, Wilson alleges he was retaliated against after filing his whistleblower complaints.  (Compl. ¶ 75).  Similarly, Wilson's failure to promote claim[4] lacks an inference of racial discrimination. According to the Complaint, Wilson was denied the promotion because he "objected to management and refused to violate internal controls against public policy."  (Compl. ¶ 74).

---

[3] To establish a prima facie case of retaliation, Wilson must prove three elements: "(1) that [he] engaged in a protected activity; (2) that [his] employer took an adverse employment action against [him]; and (3) that there was a causal link between the two events." <u>Balas v. Huntington Ingalls Indus., Inc.</u>, 711 F.3d 401, 410 (4th Cir. 2013) (quoting <u>EEOC v. Navy Fed. Credit Union</u>, 424 F.3d 397, 405-06 (4th Cir. 2005)) (internal quotation marks omitted).

[4] To establish a prima face case of discriminatory failure to promote under Title VII, Wilson must show four elements: "(1) he is a member of a protected group; (2) he applied for a position; (3) he was qualified for the position; and (4) he was rejected from the position under circumstances giving rise to an inference of unlawful discrimination." <u>Lamb v. Boeing Co.</u>, 213 F.App'x 175, 179 (4th Cir. 2007) (citing <u>Amirmokri v. Balt. Gas & Elec. Co.</u>, 60 F.3d 1126, 1129 (4th Cir. 1995)).

Accordingly, Susquehanna's Motion to Dismiss Count III will be granted.

**B.   Motion for Summary Judgment**

   **1.   Standard of Review**

Under Federal Rule of Civil Procedure 56(a), the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-48 (emphasis in original).

   **2.   Analysis**

Susquehanna argues it is entitled to summary judgment on Wilson's unequal pay claim in Count III because there is no

genuine dispute of material fact that Wilson earned more than Mr. Dennison.

To establish a prima facie unequal pay claim under Title VII, Wilson must show that: "(1) [he] is a member of a protected class; (2) [he] was paid less than an employee outside the class; and (3) the higher paid employee was performing a substantially similar job." Kess v. Mun. Emps. Credit Union of Balt., Inc., 319 F.Supp.2d 637, 644 (D.Md. 2004). Susquehanna challenges the third element.

Wilson alleges he was part of the team that hired and trained Appraisal Review Associate, Robert Dennison. Wilson also alleges that Mr. Dennison indicated that he earned significantly more than Wilson. According to Susquehanna, contrary to his allegations, Wilson made ninety-six cents more per hour than Mr. Dennison while they were employed in the same capacity. To support this assertion, Susquehanna provides a declaration from Karen Gerdes, Regional Manager of Human Resources. (See Defs.' Mot. Ex. 1 ["Gerdes Decl."], ECF No. 3-2). Ms. Gerdes declares that while Susquehanna employed Mr. Dennison as an Appraisal Review Associate, Wilson earned ninety-six cents more per hour than Mr. Dennison. (Gerdes Decl. ¶ 5). Ms. Gerdes further declares that shortly after Mr. Dennison left Susquehanna's employ, it retained Mr. Dennison as a consultant under different payment arrangements. (Id. ¶¶ 6-7).

Wilson rebuts Susquehanna's evidence with a his own declaration averring that "[u]pon information and belief, Mr. Dennison's salary, compensation arrangement, and employment privileges were more favorable compared to [his] employment privileges and salary on a gross income basis." (Pl.'s Opp'n Ex. 5, ¶ 10, ECF No. 6-8). Wilson's "information and belief," however, does not raise a genuine issue of material fact sufficient to defeat summary judgment.[5] See Fed.R.Civ.P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); Causey v. Balog, 162 F.3d 795, 803 n.4 (4th Cir. 1998) ("Rule 56(e) precludes consideration of materials not based on the affiant's first hand knowledge."). Furthermore, Wilson's self-serving declaration fails to create a genuine issue of material fact regarding the disparity between Wilson's and Mr. Dennison's salary. Therefore, it is undisputed that Wilson earned more than Mr. Dennison while Susquehanna employed both as Appraisal Review Associates.

Wilson avers, in the alternative, that this issue is not ripe for summary judgment. To support this averment, Wilson submits a

---

[5] Moreover, paragraphs six and seven of Wilson's declaration fail to defeat Susquehanna's motion because paragraph six constitutes hearsay and Dennison's alleged contractual agreement with Susquehanna removes him from consideration as a reasonable comparator.

Rule 56(d) declaration from counsel insisting, in conclusory fashion, that Wilson has not had the opportunity for discovery and that the facts needed to oppose the motion is in Susquehanna's exclusive control. (See Pl.'s Opp'n Ex. 6, ECF No. 6-9). Rule 56(d), however, requires Wilson to "specify" the reasons he cannot present facts "essential" to his opposition. Fed.R.Civ.P. 56(d); see also Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995) (stating a request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment"). Wilson has not provided any indication that additional discovery may uncover facts to rebut Ms. Gerdes's review of Susquehanna's records. Accordingly, Wilson's request for additional discovery will be denied and Susquehanna's Motion for Summary Judgment on Wilson's unequal pay claim will be granted.

**C.   Wilson's Request for Leave to Amend the Complaint**

In his Opposition, Wilson avers he may amend his Complaint as a matter of course and, in the alternative, justice requires that the Court grant him leave to amend.

Contrary to Wilson's averment, Rule 15(a)(1) permits plaintiffs to amend their complaints as a matter of course within twenty-one days of service or "if the pleading is one to which a responsive pleading is required, [twenty-one] days after service

14

of a responsive pleading or [twenty-one] days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." None of these conditions apply here because the twenty-one days to file the amendment under either provision has passed.

Conversely, Rule 15(a)(2) permits a party to amend its complaint "with the opposing party's written consent or the court's leave." Wilson seeks leave of the Court. Leave to amend should be freely given "when justice so requires." Fed.R.Civ.P. 15(a)(2). Denial of an amendment request is appropriate, however, where "'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" Edwards, 178 F.3d at 242 (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)).

After careful review of the Complaint, the Court concludes that an amendment would be futile in this matter. There is no indication that Wilson's claims are salvageable given the bases upon which they were denied. Moreover, Wilson failed to submit a proposed amended complaint or identify any factual allegations that would overcome the deficiencies in his Complaint.

Accordingly, Wilson's request for leave to amend his Complaint will be denied.

**III.  CONCLUSION**

For the foregoing reasons, the Court GRANTS Susquehanna's Motion to Dismiss Plaintiff's Complaint and Motion for Summary Judgment.  (ECF No. 3).  Wilson's request to amend his Complaint is DENIED.  A separate Order follows.


Entered this 19th day of May, 2014.


                                                    /s/
                               _____
                               George L. Russell, III
                               United States District Judge

16